**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| OMNI LION'S RUN, L.P. | § | LEAD CASE NO. 17-60329 |
| OMNI LOOKOUT RIDGE, L.P. | § | 2d CASE NO. 17-60447 |
| Jointly Administered | § | |
| Debtors-in-Possession | § | CHAPTER 11 |
| | § | (Jointly Administered |
| | § | Under 17-60329) |

**DEBTORS' THIRD AMENDED JOINT PLAN OF REORGANIZATION**
**DATED OCTOBER 26, 2017 AS MODIFIED ON JANUARY 19, 2018**

DATED:     January 19, 2018

Ron Satija
HAJJAR PETERS LLP
State Bar No. 24039158
3144 Bee Caves Rd
Austin, Texas 78746
512.637.4956
512.637.4958 (fax)
rsatija@legalstrategy.com
ATTORNEY FOR DEBTORS

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| OMNI LION'S RUN, L.P. | § | LEAD CASE NO. 17-60329 |
| OMNI LOOKOUT RIDGE, L.P. | § | 2d CASE NO. 17-60447 |
| Jointly Administered | § | |
| Debtors-in-Possession | § | CHAPTER 11 |
| | § | (Jointly Administered |
| | § | Under 17-60329) |

## DEBTORS' THIRD AMENDED JOINT PLAN OF REORGANIZATION
## DATED OCTOBER 20, 2017, AS MODIFIED ON JANUARY 19, 2018

**COME NOW** Omni Lookout Ridge, L.P. ("Lookout Ridge") and Omni Lion's Run, L.P. ( "Lion's Run") (together the "Debtors,") as debtors in possession in these bankruptcy cases and pursuant to Chapter 11, Title 11, United States Code (the "Bankruptcy Code") propose the following Joint Plan of Reorganization. (the "Plan").

## ARTICLE I
## DEFINITIONS AND USE OF TERMS

1.01     **Defined Terms**.  Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this Section 1.01.

(a)     **Administrative Expense Claim** means an administrative expense or Claim described in 11 U.S.C. § 503, that arose on or after May 2, 2017, in the Omni Lion's Run case, 17-60329, and on or after June 6, 2017, in the Omni Lookout Ridge case, 17-60447, and that is entitled to administrative priority under to 11 U.S.C. § 507(a)(1), including but not limited to Claims for compensation of professionals made pursuant to 11 U.S.C. §§ 330 and 331, and all fees and charges assessed against the Debtor and the Debtor's property under 28 U.S.C. § 1930.

(b)     **Allowed Claim** means either: (i) a Claim against the Debtors or their property that is allowable under the Bankruptcy Code to the extent that a proof of claim, proof of interest, or request for payment was timely filed or, with leave of the Bankruptcy Court, was late filed and as to which no objection has been filed or, if an objection has been filed, is allowed by a Final Order, unless otherwise provided in this Plan, or (ii) a Claim against the Debtors or their properties that is scheduled and not listed as disputed, contingent or unliquidated, and as to which Claim no objection has been filed or, if an objection is filed, is allowed by a Final Order.

(c)     **Apartment Complex**, when referring to one of the two Debtors, means either the Lion's Run Apartments located at 701 E Central Texas Expy, Harker Heights, TX 76548-7203 owned by Debtor Omni Lion's Run, L.P., or the apartment complex at 201 Lookout Ridge Blvd., Harker Heights, Bell County, Texas owned by Debtor Omni Lookout Ridge, L.P. When in the plural, it refers to both properties.

1

(d)      **ATCFU** means Austin Telco Federal Credit Union.

(e)      **Bankruptcy Cases** means the Debtors' Chapter 11 cases pending in the Bankruptcy Court.  If only one of the cases is meant, it will be referred to individually by caption.

(f)      **Bankruptcy Code** means the United States Bankruptcy Code, 11 U.S.C. § 101 et seq.

(g)      **Bankruptcy Court** means the United States Bankruptcy Court for the Western District of Texas, Waco Division, or such other Court that may have jurisdiction with respect to Debtors' Bankruptcy Cases.

(h)      **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended, promulgated under 28 U.S.C. § 2075, and the Local Rules of the Bankruptcy Court, as applicable from time to time to the Debtors' Bankruptcy Case.

(i)      **Bar Date** means the dates subsequent to which proof of a pre-petition Claim against the Debtors may not timely be filed or, with respect to proofs of claims held by governmental agencies, the dates by which those must be filed.  The Bar Date for government agencies' Claims in the Omni Lion's Run case, 17-60329, is October 29, 2017 ("the Lion's Run government bar date") and the Bar Date for all other Claims is September 18, 2017 ("the Lion's Run claims bar date").  The Bar Date for government agencies' Claims in the Omni Lookout Ridge case, 17-60447, is December 3, 2017 ("the Lookout Ridge government bar date"), and the Bar Date for all other Claims is September 25, 2017 ("the Lookout Ridge claims bar date").

(j)      **Business Day** means a day that the office of the Clerk of the Bankruptcy Court is open for business as usual.

(k)      **Claim** means (i) any right to payment from the Debtor(s), whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor(s), whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

(l)      **Claimant** means any Person or entity having or asserting a Claim in either of these bankruptcy cases.

(m)      **Class** or **Classes** mean all of the holders of Claims or Equity Interests that the Debtors have designated pursuant to 11 U.S.C. § 1123(a)(1) as having substantially similar characteristics as described in Articles V and VI of this Plan.

(n)      **Confirmation** means the entry by the Bankruptcy Court of the Confirmation Order.

(o)      **Confirmation Date** means the date on which the Confirmation Order is entered.

(p)     **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to 11 U.S.C. § 1129.

(q)     **Contested Claim** means a Claim against the Debtors or their property that either (a) is listed in the Debtors' schedules of assets and liabilities as disputed, contingent or unliquidated; (b) is the subject of a pending action in a forum other than the Bankruptcy Court, unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (c) has had or is subject to a pending objection or request for estimation filed by the Debtors or by any other party in interest in accordance with the Bankruptcy Code and the Bankruptcy Rules.

(r)     **Creditor** shall have the meaning specified by 11 U.S.C. § 101(9) of the Bankruptcy Code.

(s)     **Cure Claim** means a Claim in the amount necessary to cure any default or arrearage, together with the amount necessary to compensate for damages suffered as a result of such default or arrearage, on an unexpired lease or executory contract that has been assumed by the Debtor pursuant to 11 U.S.C. § 365.

(t)     **Debtors** means both Omni Lions Run, L.P. ("Lion's Run"), a Texas limited partnership, which is the debtor in possession in the Bankruptcy Case number 16-60329 and Omni Lookout Ridge, L.P. ("Lookout Ridge"), a Texas limited partnership, which is the debtor in possession in the Bankruptcy Case number 16-60447.  If only one of these entities is meant, it will be referred to individually by name and/or case number.  If a reference can apply to either Debtor, the term "Debtor" will be used in the singular.

(u)     **Effective Date** means the first Business Day after the Confirmation Order becomes a Final Order.

(v)     **Estate** means the estate of each Debtor created pursuant to 11 U.S.C. § 541.

(w)     **Equity Interests** means the interests of Omni GP, LLC, the general partner, and Gregory Hall as limited partner in the Debtors and all rights associated therewith, and all Claims arising from or relating to such Equity Interests, including but not limited to Claims for rescission.

(x)     **Final Order** means an order or judgment entered by the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties, as to which the time to appeal has expired and as to which a stay pending appeal has not been granted.

(y)     **General Unsecured Claim** means an Unsecured Claim that is not entitled to priority under 11 U.S.C. § 507(a).

(z)     **Guarantor** means Gregory Hall, who has guaranteed both Debtors' obligations to the Lenders.

(aa)    **Impaired** means the treatment of an Allowed Claim pursuant to the Plan *unless*, with respect to such Claim, either (a) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder of such Claim or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, the Reorganized Debtor(s) (i) cure any default that occurred before or after the commencement of the Case on the Petition Date, other than default of the kind specified in 11 U.S.C. § 365(b)(2), (ii) reinstate the maturity of such Claim as such maturity existed before such default, (iii) compensate the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law, and (iv) does not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim; or (c) the Plan provides that on the Effective Date the holder of such Claim receives, on account of such Claim, cash equal to the amount of such Allowed Claim.

(bb)    **Insider** has the meaning in § 101(31) of the Code.  Insiders of the Debtors include, but are not necessarily limited to, Omni GP LLC and Gregory Hall.

(cc)    **Lenders** means the Lookout Ridge Lender and the Lion's Run Lender.

(dd)    **Lien** shall mean a contractual or statutory lien against or security interest in an interest of the Debtor(s) in real or personal property.

(ee)    **Lookout Ridge** means Omni Lookout Ridge, L.P., a Texas limited partnership, which is the debtor-in-possession in the Bankruptcy Case number 16-60447

(ff)    **Lookout Ridge Lender** means LB-UBS 2007-C2 Lookout Ridge Boulevard, LLC.

(gg)    **LNR** means LNR Partners LLC the special servicer for both the lender in the Lookout Ridge case, LB-UBS 2007-C2 Lookout Ridge Boulevard, LLC, and the lender in the Lion's Run case, Comm 2015-CCRE22 E. Ctral Texas Expy LLC.

(hh)    **Lion's Run** means Omni Lions Run, L.P., a Texas limited partnership, which is the debtor-in-possession in the Bankruptcy Case number 16-60329

(ii)    **Lion's Run Lender** means Comm 2015-CCRE22 E. Ctral Texas Expy LLC.

(jj)    **Mr. Hall** means Gregory Hall.

(kk)    **Person** means an individual, partnership, or corporation, but does not include a governmental unit unless the government unit acquires an asset as a result of operation of a loan guarantee agreement, or as receiver or liquidating agent, in which case such governmental unit shall be considered a Person for purposes of 11 U.S.C. § 1102.

(ll)    **Petition Date** means May 2, 2017, in the Omni Lion's Run case, 17-60329, and June 6, 2017, in the Omni Lookout Ridge case, 17-60447, and is the date on which the Debtor filed its petition for relief, commencing its Bankruptcy Case.

4

(mm) **Plan** means this Plan of Reorganization Dated June 26, 2017, as it may be amended, modified or supplemented by the Debtor from time to time as permitted herein and by the Bankruptcy Court.

(nn) **Priority Creditor** means a Creditor whose Claim is entitled to priority under 11 U.S.C. § 507.

(oo) **Property** in each case means the Apartment Complex and all personal property associated with it.

(pp) **Property of the Estate** means all property in which the Debtors hold a legal or an equitable interest, including all property described in 11 U.S.C. § 541.

(qq) **Receiver** and any references thereto including Receivership and Receivership Order refers means Sal Thomas of Tarantino Properties, who was appointed as receiver of the Apartment Complex owned by Omni Lion's Run, L.P., on or about February 9, 2017, pursuant to the Order of the 146th District Court, Bell County, Texas in the case of Wilmington Trust v. Omni Lion's Run, L.P.

(rr) **Reorganized Debtor** refers to the new entity that emerges following Confirmation of the Plan, which in the case of each Debtor shall be an entity with the same name and entity name as previously.

(ss) **Secured Claim** means any Claim secured by a Lien or other charge or interest in property in which either Debtor has an interest, to the extent of the value thereof as determined in accordance with 11 U.S.C. § 506(a).

(tt) **Secured Creditor** or **Secured Claimant** means any Claimant holding a Secured Claim.

(uu) **Unsecured Claim** means a Claim that is not a Secured Claim.

(vv) **Unsecured Creditor** or **Unsecured Claimant** means any Claimant holding an Unsecured Claim.

(ww) **WSJ Prime** means prime rate plus one percent, as published in The Wall Street Journal on the first day of each calendar year that is not a Saturday, Sunday, or legal holiday.

1.02 **Number and Gender of Terms**. Whenever the singular number is used, it shall include the plural, and the plural shall include the singular, as appropriate to the context. Words of any gender shall include each other gender where appropriate.

1.03 **Terms Defined in the Bankruptcy Code**. Capitalized terms not specifically defined in Section 1.01 of the Plan shall have the definitions, if any, given those terms in the Bankruptcy Code.

1.04    **Headings**.  The headings and captions used in the Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

1.05    **Computation of Time**.  In computing any time prescribed herein the provision of Fed. R. Bankr. P. 9006(a) shall apply.

**ARTICLE II**
**BASIS OF PLAN**

2.01    **Generally**.  The Plan is a plan of reorganization.  The Debtors will continue to own and operate the Apartment Complexes.  The Plan proposes to repay the Debtors' Creditors over approximately five years, from the income from the Apartment Complexes and from periodic infusions of capital, some of which will be paid prior to the Effective Date of the Plan, from the Guarantor. See Section VI below regarding the members' agreement regarding these contributions and distributions to them from the Debtors.  If timely paid, such contributions will entitle the contributing member to keep his interest in the Reorganized Debtors. All Claims will be paid over periods of not more than five years. See Section IV below for a summary of the treatment of each Class of Claims under the Plan.

**ARTICLE III**
**PROVISIONS APPLICABLE TO ALL CLAIMS**

3.01    **Treatment of Claims**.  This Plan is intended to resolve all Claims against the Debtors and/or their property of whatever character, whether contingent or liquidated, or whether or not allowed by the Bankruptcy Court pursuant to 11 U.S.C. § 502(a).  However, only Allowed Claims will receive treatment afforded by the Plan. The Plan is designed to insure that Claimants will receive at least as much pursuant to this Plan as they would receive in a liquidation of the Debtor pursuant to Chapter 7 of the Bankruptcy Code.

3.02    **Allowed Claims**.  To receive a distribution under the Plan, a Creditor must have an Allowed Claim.

3.03    **Amount of Claims**.  If either of the Debtors have scheduled a Claim and have not scheduled such Claim as disputed, contingent, or unliquidated, then the amount scheduled shall control, unless the Creditor files a proof of claim in a different amount or a party in interest files an objection to the scheduled Claim.  If a Creditor files a proof of claim, then the amount stated in the proof of claim shall control, unless a party in interest files an objection to the Claim.  If a party in interest files an objection to a Claim for which a proof of claim is filed, or to a scheduled Claim, then the amount determined by the Bankruptcy Court in a Final Order shall control. If a Claim has been scheduled as disputed, contingent or unliquidated and the Creditor has not filed a proof of claim by the applicable Bar Date, the Claim shall be deemed to be disallowed unless this Plan specifically provides otherwise.

3.04    **Allowance of Post-Petition Interest, Fees and Costs**.  Unless otherwise provided in the Plan, a Claim shall not be entitled to post-petition interest, fees or costs.

3.05        **Filing of Administrative Claims**.  Any requests for allowance of Administrative Expense Claims, other than a request for post-petition fees or costs as described in Section 3.07 below, shall be filed within sixty (60) days after the Effective Date or shall be barred.

3.06        **Cure Claims**.  Any Cure Claims not scheduled as undisputed, liquidated and non-contingent Claims shall be filed within thirty (30) days after the Effective Date or shall be barred, unless otherwise agreed by the parties.

3.07        **Filing of Requests for Post-Petition Fees or Costs**.  Any requests for allowance of post-petition fees or costs pursuant to 11 U.S.C. § 506(b) shall be filed within sixty (60) days after the Effective Date or shall be barred.

3.08        **Objections to Claims**.  Any party authorized by the Bankruptcy Code may object to the allowance of a pre-petition Claim at any time prior to the later of sixty (60) days after the Effective Date or thirty (30) days after such proof of claim is filed.  Any proof of claim filed after the Bar Date set by the Bankruptcy Court and applicable to such Claim shall be of no force and effect and shall be deemed disallowed unless the Debtors waive the deadline as to a particular claim or the Court orders otherwise.  All Contested Claims shall be litigated to Final Order; provided, however, that the Reorganized Debtor may compromise and settle any Contested Claim, and further provided that if a Claim has been scheduled as disputed, contingent or unliquidated and the Creditor has not filed a proof of claim by the applicable Bar Date, the Claim shall be deemed to be disallowed unless this Plan specifically provides otherwise.

3.09        **Distributions on Contested Claims**.  No distributions under this Plan shall be made to the holder of a Claim that is in dispute, unless and until such Claim becomes an Allowed Claim, unless otherwise provided in this Plan.  When and if a Contested Claim becomes an Allowed Claim, the Reorganized Debtor shall at the next scheduled distribution under the Plan to the Class of Creditors into which the Claim falls pay the newly Allowed Claim a sum sufficient to bring that Claimant current as if it had been paid according to the Plan since the Effective Date.  If a Claim is disputed in whole or in part because either Debtor asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of such offset or recoupment, less the amount of the Allowed Claim.  In addition, any party authorized by the Bankruptcy Code may request that the Bankruptcy Court estimate any contingent, disputed or unliquidated Claim pursuant to 11 U.S.C. § 502(c) at any time.

## ARTICLE IV
## ADMINISTRATIVE AND PRIORITY CREDITORS

4.01        **Administrative Expense Claims and Other § 507(a)(2) Priority Claims**.  Where required by the Bankruptcy Code, and upon approval by the Bankruptcy Court, the Reorganized Debtor shall pay the Administrative Expense Claims of the Bankruptcy Case, allowed pursuant to § 503 of the Code, and each Allowed Claim entitled to priority pursuant to § 507(a)(2) of the Code, on a current basis.

**ARTICLE V**
**CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS**

5.01        **Classification**.  Claims and Equity Interests are classified as follows:

Class 1. Allowed Administrative Claims against either debtor under § 503(b)(2) of the Bankruptcy Code.

Class 2.  The Allowed Priority Claims against Omni Lion's Run.

Class 3.  The Allowed Priority Claims against Omni Lookout Ridge.

Class 4.  The Allowed Secured Ad Valorem Tax Claims of Omni Lion's Run.

Class 5.  The Allowed Secured Ad Valorem Tax Claims of Omni Lookout Ridge.

Class 6.  The Allowed Secured Claims of IRS against Omni Lion's Run.

Class 7.  The Allowed Secured Claims of IRS against Omni Lookout Ridge.

Class 8.  Allowed Claim of Comm 2015-CCRE22 E. Ctral Texas Expy LLC against Omni Lion's Run.

Class 9.  Class 9 Claim - Allowed Secured Claim of LB-UBS 2007-C2 Lookout Ridge Boulevard, LLC against Omni Lookout Ridge.

Class 10.  Allowed Claim of Belfor Property Restoration.

Class 11.  Unsecured Tenant Deposit Claims from Apartment Leases.

Class 12.  Allowed Unsecured Claims over $500, the holders of which do not elect to be included in Class 13.

Class 12A Claims – Allowed Unsecured Claims over $500 against Lion's Run, the holders of which do not elect to be included in Class 13.

Class 12B Claims – Allowed Unsecured Claims over $500 against Lookout Ridge, the holders of which do not elect to be included in Class 13.

Class 12C Claims –Allowed Unsecured, Contingent Claim of ATFCU.

Class 13.  Administrative Convenience Class: Allowed Unsecured Claims of $500 or less, including each Allowed Unsecured Claim over $500 that the holder elects to reduce to $500.

Class 14.  Allowed Interests in the Debtor.

## ARTICLE VI
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

### Class 1-Administrative Expense Claims

6.01        Administrative claims consist of expenses incurred during the chapter 11 case, which are approved by the Bankruptcy Court and expenses incurred in operating the Debtor's business. Most administrative expense claims consist of claims by professionals employed by the Debtor in the bankruptcy case, which must be approved by the Bankruptcy Court. Other administrative claims are claims arising post-petition which may have not been paid. The Debtor has paid and intends to continue to pay normal post-petition operating expenses as they become due in the ordinary course of business. The Administrative Claims of which Debtor is aware at this time include its bankruptcy counsel, as follows:

| Name | Retainer | Est. Fees as of Jan. 19, 2018 |
|---|---|---|
| Hajjar Peters LLP | $20,000 per case | $    178,000.00 |

Guarantor has guaranteed the payment of the fees of Hajjar Peters LLP and so the funding of those fees other than nominal monthly payments will be paid by Guarantor.

No Administrative Expense Claims (other than U.S. Trustee fees) shall be allowed except pursuant to Court order. Any application for allowance of an administrative expense claim shall be filed within 60 days after the Effective Date or shall be barred.

Under the proposed Plan, unless otherwise agreed, each holder of an Administrative Claim shall be paid in full by the Reorganized Debtors on the Effective Date of the Plan or on the date that a final order is entered approving the Administrative Expense Claim. To the extent that the cash of the Reorganized Debtors is not sufficient to pay allowed claims in this class, the Reorganized Debtors' limited partners will contribute an amount to the Reorganized Debtor sufficient to make such payment to this class.

Class 1 is not entitled to vote.

6.02        **Class 2 Claims - Allowed Priority Claims against Omni Lion's Run**.  The only current claim in this class is the priority claim of the Internal Revenue Service, which shall be paid in full, with interest at 4.0% per year, in equal monthly installments sufficient to fully amortize the balance of each of those Claims over a period beginning on the Effective Date and ending on May 1, 2022. Federal taxes for years 2017 forward will be paid when due.  The plan contains additional language requested by the IRS regarding the terms of payment which further specify its treatment.

Class 2 is not Impaired.

6.03        **Class 3 Claims - Allowed Priority Claims against Omni Lookout Ridge**. There are two current claims in this class.  First is the priority claim of the Internal Revenue Service, which shall be paid in full, with interest at 4.0% per year, in equal monthly installments sufficient to fully amortize the balance of each of those Claims over a period beginning on the

9

Effective Date and ending on June 5, 2022. Federal taxes for years 2017 forward will be paid when due. The plan contains additional language requested by the IRS regarding the terms of payment which further specify its treatment. Second is the Claim of the Texas Workforce Commission, which shall be paid in full on the Effective Date.

Class 3 is not Impaired.

6.04 **Class 4 Claims -The Allowed Secured Ad Valorem Tax Claims of Omni Lion's Run**. The Allowed Class 5 Claims shall be paid in full, as follows: The Allowed Claims will be paid in full on the Effective Date by the Lion's Run Lender.

Class 4 is Unimpaired.

6.05 **Class 5 Claims – Allowed Secured Ad Valorem Tax Claims of Omni Lookout Ridge**. The Allowed Class 5 Claims shall be paid in full, as follows: The b Allowed Claims will be paid in full on the Effective Date by the Lookout Ridge Lender.

Class 5 is Unimpared.

6.06 **Class 6 Claim – The Allowed Secured Claims of IRS against Omni Lion's Run**. The Allowed Class 6 Claim has been paid in full by the guarantor out of his own funds, not from operating revenues of these Debtors. It is listed here in order to maintain numerical integrity of the class numbering.

6.07 **Class 7 Claim - The Allowed Secured Claims of IRS against Omni Lookout Ridge**. The Allowed Class 7 Claim has been paid in full by the guarantor, not from operating revenues of these Debtors. It is listed here in order to maintain numerical integrity of the class numbering.

6.08 **Class 8 Claim – Allowed Claim of Comm 2015-CCRE22 E. Ctral Texas Expy LLC ("Lion's Run Lender") against Lion's Run**. The Allowed Claim of the Lion's Run Lender will be paid in full by Lion's Run as follows: As of the Effective Date, the Lion's Run Lender shall apply all suspense and reserve funds to its claim. The existing promissory note (the "Original Note") to the Lion's Run Lender will be modified and Lion's Run will execute a new, modified note ("Amended Lion's Run Note") payable to the Lion's Run Lender as follows:

**Principal**. The principal shall be $5,928,737.71 [plus attorneys' fees incurred by the Lender after November 15, 2017 to which it is entitled to payment under its existing loan documents, not to exceed $60,000 as of February 7, 2018], to be increased by $1,070.47 each day that the Plan Effective Date is after February 7, 2018. The principal of the note will be adjusted to the extent that the Allowed Claims of the holders of Class 4 claims paid by the Lender varies from $105,127.96.

**Interest.** The interest rate shall be 6.5% per annum; any interest calculation deploying the actual-360 method.

**Default Interest.** The default interest rate shall be 10.5% per annum; any interest calculation deploying the actual-360 method.

10

**Maturity**.  The note shall mature on June 30, 2019.

**Initial Payments.**  Commencing on the 5th day of the month following the Effective Date, Lion's Run shall pay $25,000 each month (a) through June 2018 or (b) until: the Catch Up Payment is made, whichever is earlier.

**Catch-up Payment.**  On or before June 30, 2018, Lion's Run shall pay all accrued but then-unpaid interest consisting of (i) the accrued interest from the Effective Date through such payment, (ii) *less* the aggregate Initial Payments tendered to the Lion's Run Lender.

**Monthly Payments.**  Beginning the month after the Catch Up Payment is made but no later than July 2018 and continuing each month thereafter, Lion's Run shall pay accrued interest each month.

**Balloon Payment.**  On or before June 30, 2018, Lion's Run shall pay not less than $500,000, such balloon payment (i) being in addition to any required monthly payment, initial payment, or Catch-up Payment, and (ii) being applied to the principal balance of the note.

## Additional Terms Regarding Treatment Of Class 8 Claim

**Guaranty.**  The Guarantor shall guarantee the Amended Lion's Run Note.

**Yield Maintenance.**  There shall be no yield maintenance premium assessed for prepayment of the Amended Lion's Run Note.

**Loan Documentation.**  The Lion's Run Lender's Deed of Trust, Security Agreement and Assignment of Leases and Fixture Filing shall remain in full force and effect to secure the Amended Lion's Note and shall only be modified, as necessary, to be consistent with the terms of the Debtor's Plan; however, the existing Loan Agreement dated as of February 18, 2015 between the Lion's Debtor and Cantor Commercial Real Estate Lending L.P. shall be amended and restated (the "Amended Loan Agreement") as of the Effective Date so as to effect the terms of the Plan.  The parties agree to execute such other documents as are necessary and sufficient to effect the intention of the parties.

**The Receiver.**  The Receiver shall turnover the Lion's Property to Lion's Run on the Effective Date. Upon the filing of this Plan Modification, the Parties shall use commercially reasonable best efforts to ensure streamlined, cooperative transition of the Lion's Property to the custody of Lion's Run, including the review of books, records, and bills presently in the custody of the Receiver and Receiver's granting continuous access to Debtors' representatives to the OneSite software, or other such comparable software used by the Receiver, if any.

**Capital Contribution for Deferred Maintenance.**  On or before June 30, 2018 and at the same time as the "Catch Up" payments by Lion's Run are paid, Guarantor will contribute $425,000 into a segregated account for capital improvements to and deferred maintenance on Lion's Run apartments identified in the April 2017 Property Condition Report.  On or before the Effective Date, Lion's Run shall submit to the Lion's Run Lender a schedule containing a listed of proposed repairs or improvements and containing bids or estimates for such repairs or

improvements for pre-approval by the Lion's Run Lender.  The Lion's Run Lender shall have a security interest in the segregated account.

**Releases and Dismissals.** As of the Effective Date, Lion's Run will, and does hereby, release any all claims and causes of action against the Lion's Run Lender and will withdraw its objection to the Lion's Run Lenders' proof of claim, it being understood and agreed that the Lion Run Lender's Allowed Claim shall be treated as set forth in this Plan. Lion's Run Lender shall dismiss its lawsuit against Guarantor pending in the Texas state district court, with prejudice.

**Prohibition against Refiling.** Lion's Run is hereby prohibited from filing for relief under Title 11 of the United States Code prior to November 6, 2019.

Class 8 is impaired.

6.09    **Class 9 Claim - Allowed Secured Claim of LB-UBS 2007-C2 Lookout Ridge Boulevard, LLC against Omni Lookout Ridge**.

The Allowed Claim of the Lookout Ridge Lender will be paid in full by Lookout Ridge as follows: As of the Effective Date, the Lookout Ridge Lender shall apply all suspense and reserve funds to its claim, except the funds held by Lender under the Escrow Order in the Belfor Suit, as provided below. The existing promissory note (the "Original Note") to the Lookout Ridge Lender will be modified and Lookout Ridge will execute a new, modified note ("Amended Lookout Note") payable to the Lookout Ridge Lender as follows:

**Principal.**  The principal shall be $5,548,491.62 [plus attorneys' fees incurred by the Lender after November 15, 2017 to which it is entitled to payment under its existing loan documents, not to exceed $60,000], to be increased by $1,001.81 each day that the Plan Effective Date is after February 7, 2018. The principal of the note will be adjusted to the extent that the Allowed Claims of the holders of Class 5 claims paid by the Lender varies from $149,117.08.

**Interest.**  The interest rate shall be 6.5% per annum; any interest calculation deploying the actual-360 method.

**Default Interest.** The default interest rate shall be 10.5% per annum; any interest calculation deploying the actual-360 method.

**Maturity.**  The note shall mature on June 30, 2019.

**Initial Payments.**  Commencing on the 5th day of the month following the Effective Date, Lookout Ridge shall pay $21,560 each month (a) through June 2018 or (b) until the Catch Up Payment is made, whichever is earlier.

**Catch-up Payment.**  On or before June 30, 2018, Lookout Ridge shall pay all accrued but then-unpaid interest consisting of the accrued interest from the Effective Date through such payment, less the aggregate Initial Payments tendered to the Lookout Lender.

**Monthly Payment.**  Beginning the month after the Catch Up Payment is made but no later than July 2018 and continuing each month thereafter until maturity, Lookout Ridge shall pay accrued interest each month.

**Balloon Payment.**  On or before June 30, 2018, Lookout Ridge shall pay not less than $1,000,000, such balloon payment (i) being in addition to any required monthly payment, initial payment, or Catch-up Payment, and (ii) being applied to the principal balance of the New Lion's Note.

**Application Of Insurance Proceeds Or Equivalent Amount.**  Lookout Ridge shall, on or before June 30, 2018, either (i) cause to be released the sum of $1,317,209.74 in funds held in escrow by the Lookout Ridge Lender (the "Escrowed Funds") pursuant to the Agreed Order to Segregate and to Dissolve Temporary Restraining Order entered on June 5, 2017 in the lawsuit styled Belfor USA Group, Inc. v. Omni Lookout Ridge, L.P. and L-B-UBS 2007-C2 Lookout Ridge Boulevard, LLC pending in the 146th District Court of Bell County, Texas, case no. 292,080-B (the "Belfor Suit") such that the Lookout Ridge Lender may apply the Escrowed Funds to the principal balance of the Amended Lookout Note, or (ii) pay the Lookout Ridge Lender $1,317,209.74, or (iii) pay the Lookout Ridge Lender $1,317,209.74, from a combination of the Escrowed Funds and other sources. Upon its receipt of the sum of $1,317,209.74, Lookout Ridge Lender shall assign any and all claims to the Escrowed Funds to Lookout Ridge and the parties to the Belfor Suit shall dismiss the Lookout Ridge Lender from the Belfor Suit. For the avoidance of doubt, the application of the Escrowed Funds, or payment, as applicable, shall be in addition to any required Initial Payments, Catch-Up payments, or Monthly Payments, and shall be immediately applied by the Lookout Ridge Lender to the principal balance of the Amended Lookout Note.

## Additional Terms Regarding Treatment Of Class 9 Claim

**Guaranty.**  The Guarantor shall guarantee the Amended Lookout Ridge Note.

**Yield Maintenance.** There shall be no yield maintenance premium assessed for prepayment of the Amended Lookout Ridge Note.

**Loan Documentation.** The Lookout Ridge Lender's Deed of Trust, Security Agreement and Assignment of Leases and Fixture Filing shall remain in full force and effect to secure the Amended Lookout Ridge Note and shall only be modified, as necessary, to be consistent with the terms of the Debtor's Plan.  The parties agree to execute such other documents as are necessary and sufficient to effect the intention of the parties herein.

**Capital Contribution for Deferred Maintenance.** On or before June 30, 2018 and at the same time as the "Catch Up" payments by Lookout Ridge are paid, Guarantor will contribute $125,000 into a segregated account for capital improvements to, and deferred maintenance on, Lookout Ridge apartments.  On or before the Effective Date, Lookout Ridge shall submit to the Lookout Ridge Lender a schedule containing a listed of proposed repairs or improvements and containing bids or estimates for such repairs or improvements for pre-approval by the Lookout Ridge Lender.  The Lookout Ridge Lender shall have a security interest in the segregated account.

**Releases and Dismissal** As of the Effective Date, Lookout Ridge will, and does hereby, release any all claims and causes of action against the Lookout Ridge Lender and will withdraw it objection to the Lookout Ridge Lender's proof of claim, it being understood and agreed that the Lookout Ridge Lender's Allowed Claim shall be treated as set forth in this Plan. Lookout Ridge Lender shall dismiss its lawsuit against Guarantor pending in the Texas state district court, with prejudice.

**Abatement of Belfor Suit.** Except as otherwise contemplated in this Plan, the parties to Belfor USA Group, Inc. v. Omni Lookout Ridge, L.P. and L-B-UBS 2007-C2 Lookout Ridge Boulevard, LLC pending in the 146th District Court of Bell County, Texas, case no. 292,080-B (the "Belfor Suit") shall not commence or continue any action against the Lookout Ridge Lender or to recover the funds held in escrow by the Lookout Ridge Lender pursuant to the Agreed Order to Segregate and to Dissolve Temporary Restraining Order entered in the Belfor Suit on June 5, 2017, unless and until: (a) the Lookout Ridge Lender is paid pursuant to the paragraph herein titled **Application Of Insurance Proceeds Or Equivalent Amount**, or Lookout Ridge defaults in its obligation to pay the Lookout Ridge Lender under that paragraph or defaults in its obligation to pay the Allowed Claim of the holder of the Class 10 Claim. This prohibition shall not apply to any action to release all or part of the Escrowed Funds to the Lookout Ridge Lender.

**Prohibition against Refiling.** Lookout Ridge is hereby prohibited from filing for relief under Title 11 of the United States Code prior to November 6, 2019.

Class 9 is Impaired.

6.10    **Class 10 Claim – The Allowed Claim against Debtor Lookout Ridge of Belfor USA Group, Inc.** Claim 10 consists of a contract claim for building renovations performed by Belfor USA Group, Inc. and secured by a mechanic's lien. The Allowed Class 10 Claim shall be paid in full, or as otherwise agreed, by monthly payments equal to ½ of the month's rent on units leased in Building 4 and then payment of the balance of its Allowed Claim on or before June 30, 2018. Belfor shall not commence or continue any action in the Belfor Suit against Lookout Ridge, the Lookout Ridge Lender or to obtain the Escrowed Funds unless and until Lookout Ridge defaults in its payment obligations under this paragraph on or before June 30, 2017. Upon full payment of its Allowed Claim, Belfor shall assign any and all rights to the Escrowed Funds to Lookout Ridge and shall dismiss the Belfor suit. If the Lookout Ridge Lender assigns its rights in the Escrowed Funds to Lookout Ridge, Belfor shall dismiss the Lookout Ridge Lender from the Belfor Suit.

Class 10 is Impaired.

6.11    **Class 11 Claims - Unsecured Tenant Deposit Claims from Apartment Leases**. Class 11 consists of unsecured claims for deposits arising from the execution of leases by Debtor as landlord and all tenants at both Apartment Complexes. The Debtor is assuming all leases with all tenants at the Apartment Complexes. The security deposits of the tenants who are occupying space according to their leases will be returned or retained pursuant to the terms of their individual leases. The Plan will not alter the legal, equitable, or contractual rights of the tenants under Class 11 to their deposits.

14

Class 11 is not impaired.

**Class 12A Claims – Allowed Unsecured Claims over $500 against Lion's Run, the holders of which do not elect to be included in Class 13.**

Each of the holders of Class 12A Claims will be paid their claims within three years in pro-rata payments at regular intervals no less often than quarterly at 5% interest. The Debtor may pay the debt to the Class 8 and Class 9 claims in full if it is able to refinance the property. If the Debtor does so, Class 12A claims will be paid in full at the time of such refinancing. The Debtor or Mr. Hall may, at their discretion, pre-pay any claim without penalty.

Class 12A is Impaired.

6.12     **Class 12B Claims – Allowed Unsecured Claims over $500 against Lookout Ridge, the holders of which do not elect to be included in Class 13.**

Each of the holders of Class 12B Claims will be paid their claims within three years in pro-rata payments at regular intervals no less often than quarterly at 5% interest. The Debtor may pay the debt to the Class 8 and Class 9 claims in full if it is able to refinance the property. If the Debtor does so, Class 12B claims will be paid in full at the time of such refinancing,. The Debtor or Mr. Hall may, at their discretion, pre-pay any claim without penalty.

Class 12B is Impaired

6.13     **Class 12C Claims –Allowed Unsecured, Contingent Claim of ATFCU.**

If the property of the borrower on the Diamond Terrace Note is sold at a foreclosure sale, the Debtors will jointly and severally pay any deficiency claim in 36 equal monthly installment thereafter. If the property of the borrowers on the LP Pylon Note is sold at a foreclosure sale, the Debtors will jointly and severally pay any deficiency claim in 36 equal monthly installments thereafter.

Class 12C is impaired.

6.14     **Class 13 Claims – Administrative Convenience Class: Allowed Unsecured Claims of $500 or less, including each Allowed Unsecured Claim over $500 that the holder elects to reduce to $500**.  The Class 13 Claims will be paid in full in cash on the date one month after the Effective Date.

Class 13 is not Impaired.

6.15     **Class 14 Interests – Allowed Equity Interests in the Debtors**.  The Interests held by the equity interest holders of the Debtors shall be maintained in exchange for the Guarantor's contributions as described in the plan.  See Article VII below. The Interest Holders will receive no distributions unless and until all other payments under the Plan have been made in full and all creditors have either been paid in full or as agreed.

Class 14 is Impaired.

6.16      **In General – Annual/Monthly Payments**.  Unless otherwise specified, any payment to be made quarterly/monthly shall be made on the same day of the quarter/month as the Effective Date.  For example, if the Effective Date is the 10th of the month, the monthly payments shall be made on the 10th of each month.

6.17      **Pre-Payment**.  Any Claim, other than the Claim of an Insider, may be pre-paid at any time, at the discretion of the Reorganized Debtor.

## ARTICLE VII
## IMPLEMENTATION OF THE PLAN

7.01      **Implementation of the Plan**.  The Plan will be implemented pursuant to 11 U.S.C. § 1123(a) as set forth above—that is, by payments to Creditors and the satisfaction of the Liens and security interests of Secured Creditors with Allowed Claims.

7.02      **In General**.  If the Plan is approved by the Court, a Confirmation Order will be entered. The Debtor will continue to operate as a debtor in possession and discharge its duties under Chapter 11 until the Effective Date of the Plan.

7.03      **Sources of Funds for Implementation of the Plan**.  The Reorganized Debtors will continue to operate the Apartment Complexes from and after the Effective Date. The income from the Apartment Complexes will be used to fund the operating expenses of the Apartment Complexes. Any shortfall will be funded by the Guarantor.

7.04      If the Apartment Complex is sold before the completion of the Plan, all net sales proceeds will be used to pay any amounts remaining due to non-Interest Owner Creditors under the Plan before any distributions are made to Class 14 Creditors.

7.05      **Authorization**.  The Reorganized Debtors shall be responsible for complying with the terms and provisions of the Plan as it may be modified as allowed by the Bankruptcy Code.  To this end, the Reorganized Debtors are authorized and directed to execute all documents necessary or appropriate to effectuate the terms of the Plan.

## ARTICLE VIII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.01      **Assumption of Personal Property Leases and Contracts**.  The Debtor is a party to a number of contracts and personal property leases and upon Confirmation will assume all of those contracts and leases pursuant to § 365 of the Bankruptcy Code.

8.02      **Assumption of Real Property Leases**.  The Debtor is also the lessor under residential leases with its tenants and all such leases will be assumed as of Confirmation.

8.03      **Cure Claims**.  Unless otherwise stated herein, the Debtor will pay each of the Cure Claims in full, in 60 equal monthly payments. Such payments will begin one month after the Effective Date.  Any Cure Claim must be filed no later than 30 days after the Effective Date.

## ARTICLE IX
## CAUSES OF ACTION

9.01      **Article 5 Causes of Action**.  The Reorganized Debtors reserves all rights to pursue, in their sole discretion, any preferences or fraudulent transfers to the full extent allowed under the Bankruptcy Code and applicable state laws. ALL CREDITORS AND RECIPIENTS OF PAYMENTS OR TRANSFERS THAT MAY BE DEEMED PREFERENCES OR FRAUDULENT TRANSFERS, WITH ACTUAL OR CONSTRUCTIVE NOTICE OF THESE BANKRUPTCY CASES ARE HEREBY PUT ON NOTICE THAT THE REORGANIZED DEBTORS MAY PROSECUTE THESE CLAIMS. THIS PLAN IS NOT INTENDED AND DOES NOT WAIVE ANY OF DEBTORS' CHAPTER 5 CAUSES OF ACTION, EXCEPT THOSE ACTIONS AND CLAIMS EXPRESSLY RELEASED IN THE PLAN, OR CONFIRMATION ORDER.

9.02      **Other Potential Litigation**.  In addition to preferences and fraudulent transfer claims, the Debtor may also have claims and causes of action against third parties and creditors arising prior to the Petition Date. These causes of action may be prosecuted by the Reorganized Debtor or enforced by way of setoff against Claims filed against the bankruptcy estate. The Reorganized Debtor has sole discretion to prosecute any such litigation and to object to any Claims as they see fit.  Debtor Lookout Ridge is currently a party to the Belfor suit described above in paragraph 6.10 and reserves any and all claims and defenses it may assert therein against any party.  Additionally, the Debtors are retaining any and all claims and causes of against the Lenders arising out or related to the Lenders' transactions with Debtors including, but not limited to, the claims included in the adversary proceeding Lookout Ridge has filed against the Lookout Ridge Lender. Further, both Debtors may have claims against the Guarantor, however if the Guarantor injects the required capital, the Debtors will release any claims against the Guarantor.  However, such claims are not released until the liens are released by the Lenders and all creditors are paid in full or as agreed by the plan.  Any creditor seeking to pursue a claim against the Guarantor must resort to the Default provisions below.

## ARTICLE X
## EFFECT OF CONFIRMATION

10.01      **Vesting of Property**.  As of the Effective Date, the Reorganized Debtors shall be vested with all Property of the Estate, free and clear of all Liens, Claims and encumbrances except as expressly provided under the Plan.  Such Property of the Estate shall include all claims or causes of action arising in favor of the Debtor, under the Bankruptcy Code or any other applicable law; provided, however, that if after Confirmation the Bankruptcy Case is converted to a case under Chapter 7 of the Bankruptcy Code and there is an uncured default by the Reorganized Debtors under the Plan, all of such property and claims shall revest in the Estate upon such conversion.

10.02      **Plan Binding**.  Pursuant to 11 U.S.C. § 1141, the provisions of the confirmed Plan shall bind the Reorganized Debtors, the Debtors' Creditors, and the holders of the Equity Interests in the Debtors, whether or not the Claim or Equity Interest is impaired under the Plan and whether or not such Creditor or Equity Interest holder has accepted the Plan.

10.03    **Reliance on Other Parties**.  In connection with the Plan, the Debtors and their members, representatives, attorneys, accountant, and agents may rely upon the opinions of counsel, certified public accountants, and other experts or professionals employed by the Debtor, and such reliance shall presumptively establish good faith.

10.04    **Discharge**.  Confirmation of the Plan shall discharge the Debtors of all their pre-Confirmation debts.

10.05    **Injunction**.  Confirmation of the Plan shall result in the issuance of a temporary injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against the Reorganized Debtors. From and after Confirmation, all holders of Claims against the Debtor are restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor, the Reorganized Debtor, the Guarantor, or their assets; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Debtor, the Reorganized Debtor, the Guarantor, or their assets; (c) from creating, perfecting, or enforcing any encumbrance or any kind against the Debtor, the Reorganized Debtor, the Guarantor, or its assets; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Debtor, the Reorganized Debtor, or the Guarantor except as may be allowed under the Bankruptcy Code; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; *provided, however*, that each holder of a Contested Claim may continue to prosecute its proof of claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce their rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan.

### ARTICLE XI
### MODIFICATION OF THE PLAN

11.01    **Post-Confirmation Modification**.  The Debtors as proponents of the Plan may modify it at any time after Confirmation but before the Bankruptcy Case is fully administered, provided that the Plan, as modified, meets the requirements of §§ 1122 and 1123 of the Bankruptcy Code, that the Bankruptcy Court, after notice and hearing, confirms such modified Plan under § 1129, and that the circumstances warrant such modification.

11.02    **Deemed Acceptance or Rejection**.  A holder of a Claim or Equity Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, the Plan as modified, unless within any time limit fixed by the Court such holder changes its previous acceptance or rejection.

### ARTICLE XII
### POST CONFIRMATION MATTERS

12.01    **Application for Final Decree**. The Reorganized Debtors shall file an application for final decree as soon as is practicable but not later than six months after the Effective Date.  If the Bankruptcy Case cannot be fully administered during this time period, or if there are still pending matters to be ruled upon by the Bankruptcy Court, the Reorganized Debtor shall request

the Bankruptcy Court to extend that deadline after notice to all parties in interest and opportunity for hearing. If the Reorganized Debtor fails to file an application for final decree prior to such deadline or fails to timely request an extension of the same, then the Bankruptcy Court, on its own motion or at the request of any party in interest, including the United States Trustee, may enter an order closing the Debtor's Bankruptcy Case.

12.02     **U.S. Trustee**.

      (a)     **Fees**. The Reorganized Debtor shall continue to pay U.S. Trustee fees until the Bankruptcy Case is closed. All outstanding U.S. Trustee fees shall be paid on the Effective Date.

      (b)     **Reports**. The Reorganized Debtor shall file post-confirmation reports in the form prescribed by the United States Trustee until the Bankruptcy Case is closed.

## ARTICLE XIII
## DEFAULT

13.01     **Default by Debtor**. In the event of a default by the Reorganized Debtor under the Plan, Creditors may exercise any rights granted to them under documents executed to implement the Plan or any rights available to such Creditors under applicable non-bankruptcy law. In the absence of documents executed to implement the Plan, it may be enforced as a contract. Notwithstanding any other provision, any Creditor that alleges a default, other than a default in payment of an Allowed Claim, shall give the Reorganized Debtor thirty (30) days' notice and an opportunity to cure before exercising any rights available upon default against the Debtor, the Reorganized Debtor, or the Guarantor.

13.02     **Conversion to Chapter 7**. Conversion of the Bankruptcy Case to one under Chapter 7 shall be an additional remedy for default.

## ARTICLE XIV
## RETENTION OF JURISDICTION

14.01     **Jurisdiction over Matters**. Until the Bankruptcy Case is closed, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against the Debtor arising prior to the Confirmation Date, to hear and determine all causes of action that exist in favor of the Debtor that arise prior to the Confirmation Date (subject to applicable case law limiting such jurisdiction), to hear and determine all matters relating the administration of what was the Debtor's Estate, to modify the Plan, and to make such other orders as are necessary or appropriate to effectuate the provisions of the Plan in accordance with § 1142 of the Bankruptcy Code, including interpretation and implementation of the Plan and entry of a final decree.

## ARTICLE XV
## MISCELLANEOUS

15.01     **Request for Relief under 11 U.S.C. § 1129(b) -- "Cramdown."** In the event any Impaired Class fails to accept the Plan in accordance with 11 U.S.C. § 1129(a), the Debtor reserves the right to, and does hereby, request the Court to confirm the Plan in accordance with

19

11 U.S.C. § 1129(b). Any and all payments pursuant to this Plan, either pre- or post-confirmation shall be considered "new value" for purposes of that section.

15.02 **Pre-Confirmation Amendment, Withdrawal/Revocation**. The Debtor, as the proponent of the Plan, reserves the right to amend or withdraw/revoke the Plan at any time prior to the Confirmation Date. If the Debtor withdraws or revokes the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor. If the Court determines that the Joint Plan is not confirmable, the Debtor shall have the right, but not the obligation, to request that the Court sever the entities and proceed only as to one.

15.03 **Entire Agreement**. The Plan, the Confirmation Order, the Disclosure Statement, and all other documents and instruments to effectuate the Plan constitute the entire agreement and understanding among the Debtor and its Creditors relating to the subject matter hereof and supersede all prior discussions and documents.

15.04 **Payments**.

(a) **Delivery**. Any payments or distributions made by the Debtor pursuant to the Plan or as may be ordered by the Bankruptcy Court, to the extent delivered by the United States mail shall be deemed made when deposited into the mail. Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth the on the proofs of claim filed by such holders (or at the last known addresses of such holders if no proof of claim is filed) unless the Claimant files with the Bankruptcy Court and serves the Debtor with a change of address. All Claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date. After such date, all unclaimed property shall remain the property of the Debtor and the claim of any other holder with respect to such unclaimed property shall be discharged and forever barred.

(b) **Voided Checks**. Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof. Requests for reissuance of any check shall be made to the Debtors' attorney Ron Satija, at Hajjar Peters LLP, 3144 Bee Caves Rd, Austin, Texas 78746, and by email to rsatija@legalstrategy.com, by the holder of the Allowed Claim to whom such check originally was issued. Any claim in respect of such a voided check must be made to the Debtor's attorney in writing within one-hundred eighty (180) days after the date of delivery of such check. After such date, all claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall be returned to the Debtor.

15.05 **Governing Law**. Unless a rule or law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided by federal law, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan without regard to conflicts of law.

Dated:  January 19, 2018.

PLAN PROPONENT:

Omni Lion's Run, L.P. and
Omni Lookout Ridge, LP

By:     Omni Lookout GP, LLC, the sole general
        partner


By:     */s/ Drew Hall*_____
        Drew Hall, Manager


Guarantor


By:     */s/ Gregory Hall*_____
        Gregory Hall, Individually

DRAFTED and APPROVED:


*/s/ Ron Satija*_____
Ron Satija
HAJJAR PETERS LLP
State Bar No. 24039158
3144 Bee Caves Rd
Austin, Texas 78746
512.637.4956
512.637.4958 (fax)
rsatija@legalstrategy.com

ATTORNEYS FOR OMNI
LOOKOUT RIDGE, L.P., AND OMNI
LION'S RUN, L.P., DEBTORS IN
POSSESSION

## CERTIFICATE OF SERVICE

I, Ron Satija, counsel for the Debtors in Possession, hereby certify that a true and correct copy of the foregoing Plan of Reorganization was forwarded to the parties below by e-mail, on January 19, 2018, and by CM/ECF on all parties receiving notice thereby.

**U.S. Trustee:**
Deborah Bynum
Office of the US Trustee
903 San Jacinto Blvd., #230
Austin, TX 78701-2450
Deborah.A.Bynum@usdoj.gov
and ECF Notification

**Counsel for Belfor Property Restoration**

David Alford
Pakis, Giotes, Page & Burleson, P.C.
Post Office Box 58
Waco, TX 76703-0058
alford@pakislaw.com

**LB-UBS 2007-C2 Lookout Ridge Boulevard LLC and Comm 2015-CCRE22 E. Ctral Texas Expy LLC's Attorneys:**
Akin Gump Strauss Hauer & Feld, LLP
Eric Haitz
1700 Pacific Avenue, Suite 4100
Dallas, TX 75201
ehaitz@akingump.com
ECF Notification

**Counsel for Guarantor:**
Stephen Roberts
Strasburger
720 Brazos St, Ste 700
Austin, TX 78701
Stephen.roberts@strasburger.com

*/s/ Ron Satija*
Ron Satija