IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| OMNI LION'S RUN, L.P. | § | LEAD CASE NO. 17-60329 |
| OMNI LOOKOUT RIDGE, L.P. | § | 2d CASE NO. 17-60447 |
| Jointly Administered | § | |
| Debtors-in-Possession | § | CHAPTER 11 |
| | § | (Jointly Administered |
| | § | Under 17-60329) |

**DEBTORS' NOTICE OF MODIFICATIONS TO DEBTORS' THIRD AMENDED JOINT PLAN OF REORGANIZATION DATED OCTOBER 26, 2017**

Debtors hereby give notice that they have entered into a Plan Support Agreement with their respective lenders Comm 2015-CCRE22 E. Ctral Texas Expy LLC and Claim of LB-UBS 2007-C2 Lookout Ridge Boulevard, LLC, subject to final execution by the lenders' representatives, whereby the lenders have agreed to vote in favor of and support the ***Debtors' Third Amended Joint Plan of Reorganization Dated October 26, 2017, as Modified on January 19, 2018***, filed by the Debtors on January 19, 2018.

For the convenience of the parties, the modifications to the *Debtors' Third Amended Joint Plan Of Reorganization Dated October 26, 2017,* are set forth below redlined to the originally filed Third Amended Plan.

**6.04** **Class 4 Claims -The Allowed Secured Ad Valorem Tax Claims of Omni Lion's Run**. The Allowed Class 5 Claims shall be paid in full, as follows: The Allowed Claims will be paid in full, ~~with interest at 12.0% per year, in equal monthly installments sufficient to fully amortize the balance of each of those Claims over a period beginning on the Effective Date and ending on May 1, 2022. Payments will begin one month after the Effective Date. Ad valorem taxes for the years 2018 forward will be paid when due (on January 31st of the following year). The Class 5 Claimant shall retain its Lien on the Apartment Complex and the Debtor's business personal property to secure its Allowed Claims until paid in full, however so long as the Debtor is current on plan payments to the Claimant, the Claimant shall not be able to exercise its state law rights. Upon default, the Claimant shall give the Debtor notice and 30 days to cure~~ <ins>on the Effective Date by the Lion's Run Lender</ins>.

Class 4 is ~~Impaired~~<ins>Unimpaired</ins>.

**6.05** **Class 5 Claims – Allowed Secured Ad Valorem Tax Claims of Omni Lookout Ridge**. The Allowed Class 5 Claims shall be paid in full, as follows: The ~~balance of the~~<ins>b</ins> Allowed Claims will be paid in full, ~~with interest at 12.0% per year, in equal monthly installments sufficient to fully amortize the balance of each of those Claims over a period beginning on the Effective Date and ending on June 5, 2022. Payments will begin one month after the Effective Date. Ad valorem taxes for the years 2018 forward will be paid when due (on January 31st of the following year). The Class 5 Claimant shall retain its Lien on the Apartment Complex and the Debtor's business personal property to secure its Allowed Claims until paid in full, however so long as the Debtor is current on plan payments to the Claimant, the Claimant shall not be able to exercise its state law rights. Upon default, the Claimant shall give the Debtor notice and 30 days to cure~~ <ins>on the Effective Date by the Lookout Ridge Lender</ins>.

Class 5 is ~~Impaired~~<ins>Unimpared</ins>.

**6.08** **Class 8 Claim – Allowed Claim of Comm 2015-CCRE22 E. Ctral Texas Expy LLC ("Lion's Run Lender") against Lion's Run**. The Allowed Claim of the Lion's Run Lender will be paid in full by Lion's Run as follows: <ins>As of the Effective Date, the Lion's Run Lender shall apply all suspense and reserve funds to its claim.</ins> The existing promissory note (the "Original Note") to the Lion's Run Lender will be modified and Lion's Run will execute a new, modified note ("~~Modified~~<ins>Amended Lion's Run</ins> Note") payable to the Lion's Run Lender. ~~The Lion's Run Lender will retain its liens and~~ security interest in the ~~Debtor's property to secure the Modified Note. The original principal balance of the Modified Note shall consist of: (i) the unpaid principal balance of the Original Note, (ii) accrued, unpaid interest as of the Petition Date of May 2, 2017; (iii) any accrued, unpaid interest on the Original Note between the Petition Date of May 2, 2017 and the Effective Date of the Plan and (iv) any fees and expenses of the Lion's Run Lender, as may be allowed in its Allowed Claim; less all payments made by the Debtor to the Lion's Run Lender during the bankruptcy case prior to the Effective Date, including payments made by the Receiver. The Modified Note will have a Maturity Date of March 6, 2025 (the same~~

~~maturity date as the Original Note) and will be amortized over the same length of time as in the Original Note. The Modified Note will be payable~~ as follows:

~~(i) a lump sum payment on the Effective Date of the Plan in the amount of $366,841.42 funded by the release from the suspense funds and the reserve for replacement funds currently held by the Lender;~~

**Principal**.  The principal shall be $5,928,737.71 [plus attorneys' fees incurred by the Lender after November 15, 2017 to which it is entitled to payment under its existing loan documents, not to exceed $60,000 as of February 7, 2018], to be increased by $1,070.47 each day that the Plan Effective Date is after February 7, 2018. The principal of the note will be adjusted to the extent that the Allowed Claims of the holders of Class 4 claims paid by the Lender varies from $105,127.96.

**Interest.**  The interest rate shall be 6.5% per annum; any interest calculation deploying the actual-360 method.

**Default Interest.**  The default interest rate shall be 10.5% per annum; any interest calculation deploying the actual-360 method.

**Maturity**.  The note shall mature on June 30, 2019.

~~(ii) monthly payments thereafter of $30,631.24 (the same amount as set forth in the Original Note), plus the payment of tax and insurance escrows required under the Note, commencing on the 1st day of the month following the Effective Date until the payment of Arrearages;~~**Initial Payments.**  Commencing on the 5th day of the month following the Effective Date, Lion's Run shall pay $25,000 each month (a) through June 2018 or (b) until: the Catch Up Payment is made, whichever is earlier.

~~(iii) one lump-sum payment to cure Arrearages (as defined below) on or before the earlier of the (1) the close of the sale of the Ridge Property in Williamson County, Texas owned by Lookout Ridge LLC, of which Mr. Hall is the sole member, or (2) May 2, 2018;~~

~~(iv) monthly outstanding payments on the then outstanding principal balance of the Note, consisting of principal payments with the same amortization as in the Original Note plus interest; and~~

~~(v) the outstanding principal balance on the maturity date.~~

~~The Modified Note and loan documents will be provided for review ten (10) days before the confirmation hearing on the Plan.~~

~~"Arrearages" shall mean a sum of money sufficient to pay the sum of (i) accrued interest on the principal balance of the Modified Note from the Effective Date through the~~

~~date on which the Arrearages are paid under section 6.08 of this Plan; (ii) accrued but unpaid interest and default interest, to the extent Allowed, from the Petition Date through the Effective Date; and (iii) Post-Petition fees of the Lion's Run Lender through the date on which the Debtor or Mr. Hall submit the payment of the Arrearages, to the extent Allowed. For the avoidance of doubt, the payment of Arrearages shall account for and be reduced by the payments made by Lion's Run on the Effective Date, including funds released from escrow, and the monthly payments made between the Effective Date and the payment date of the Arrearages. The Debtor currently calculates the Arrearages, assuming a December 1, 2017 Effective Date and a payment of Arrearages on March 1, 2018 to be $61,291.24, also assuming arguendo that the Lion's Run Lender's Proof of Claim is correct, after deduction of the prepayment penalty, and that the attorney fees of the Lion's Run Lender recoverable from the Debtor for services rendered after the Bankruptcy Case is filed are $300,000. Debtor shall provide the Lion's Run Lender an updated calculation of Arrearages within 10 after the Effective Date of the Plan. If the Lion's Run Lender disagrees with the Debtor's calculation of the Arrearages, the Lion's Run Lender must file a motion within 20 days after the Effective Date of the Plan to determine Arrearages and, in that case, the Arrearages will be determined by the Court. If the Lion's Run Lender does not timely file such a motion, then the Arrearages served by the Debtor on the Lion's Run Lender shall be deemed to be accurate.~~

~~Mr. Hall will guarantee the Modified Note and will grant Lion's Run Lender a collateral assignment of the pending contract on the Ridge property in Williamson County, Texas owned by Lookout Ridge, LLC, of which Mr. Hall is the sole member, to secure Mr. Hall's obligation hereunder, *pari passu* with the Lookout Ridge Lender. Such lien shall be released upon the closing of the sale of the Ridge property under the pending sales contract.~~

~~Upon the Effective Date, the Receiver shall turn over the Apartment Complex to the Debtor and the Lion's Run Lender shall terminate the Receivership.~~

**Catch-up Payment.** On or before June 30, 2018, Lion's Run shall pay all accrued but then-unpaid interest consisting of (i) the accrued interest from the Effective Date through such payment, (ii) *less* the aggregate Initial Payments tendered to the Lion's Run Lender.

**Monthly Payments.** Beginning the month after the Catch Up Payment is made but no later than July 2018 and continuing each month thereafter, Lion's Run shall pay accrued interest each month.

**Balloon Payment.** On or before June 30, 2018, Lion's Run shall pay not less than $500,000, such balloon payment (i) being in addition to any required monthly payment, initial payment, or Catch-up Payment, and (ii) being applied to the principal balance of the note.

**Additional Terms Regarding Treatment Of Class 8 Claim**

**Guaranty.** The Guarantor shall guarantee the Amended Lion's Run Note.

**Yield Maintenance.** There shall be no yield maintenance premium assessed for prepayment of the Amended Lion's Run Note.

**Loan Documentation.** The Lion's Run Lender's Deed of Trust, Security Agreement and Assignment of Leases and Fixture Filing shall remain in full force and effect to secure the Amended Lion's Note and shall only be modified, as necessary, to be consistent with the terms of the Debtor's Plan; however, the existing Loan Agreement dated as of February 18, 2015 between the Lion's Debtor and Cantor Commercial Real Estate Lending L.P. shall be amended and restated (the "Amended Loan Agreement") as of the Effective Date so as to effect the terms of the Plan. The parties agree to execute such other documents as are necessary and sufficient to effect the intention of the parties.

**The Receiver.** The Receiver shall turnover the Lion's Property to Lion's Run on the Effective Date. Upon the filing of this Plan Modification, the Parties shall use commercially reasonable best efforts to ensure streamlined, cooperative transition of the Lion's Property to the custody of Lion's Run, including the review of books, records, and bills presently in the custody of the Receiver and Receiver's granting continuous access to Debtors' representatives to the OneSite software, or other such comparable software used by the Receiver, if any.

~~At the same time as the Arrearages are paid, Mr. Hall will contribute sufficient capital into a segregated reserve account held by the Debtor to pay for the balance of deferred maintenance items not previously completed as shown on the attached pro forma financial statements.~~**Capital Contribution for Deferred Maintenance.** On or before June 30, 2018 and at the same time as the "Catch Up" payments by Lion's Run are paid, Guarantor will contribute $425,000 into a segregated account for capital improvements to and deferred maintenance on Lion's Run apartments identified in the April 2017 Property Condition Report. On or before the Effective Date, Lion's Run shall submit to the Lion's Run Lender a schedule containing a listed of proposed repairs or improvements and containing bids or estimates for such repairs or improvements for pre-approval by the Lion's Run Lender. The Lion's Run Lender shall have a security interest in the segregated account.

~~If the Court determines that the interest rate required to confirm the Plan is higher than that proposed by the Debtor, the Debtor reserves the right to seek confirmation of the Plan at the higher interest rate. In that event, the interest rate differential will be added to the Arrearages and, upon payment of the Arrearages, the monthly payments will incorporate the higher interest rate.~~

~~The Debtor does not believe that the Lender's proof of claim is accurate and has filed an objection. If the Lender's claim is not an Allowed Claim as of the Effective Date, the Debtor will commence payments as provided above, but if the claim of the Lion's Run Lender is reduced by the Court, any reduction will be applied as a credit to the Modified~~

~~Note as of the Effective Date. The Modified Note may be prepaid at any time without any pre-payment penalty, charges or fees of any kind.~~

**Releases and Dismissals.** As of the Effective Date, Lion's Run will, and does hereby, release any all claims and causes of action against the Lion's Run Lender and will withdraw its objection to the Lion's Run Lenders' proof of claim, it being understood and agreed that the Lion Run Lender's Allowed Claim shall be treated as set forth in this Plan. Lion's Run Lender shall dismiss its lawsuit against Guarantor pending in the Texas state district court, with prejudice.

**Prohibition against Refiling.** Lion's Run is hereby prohibited from filing for relief under Title 11 of the United States Code prior to November 6, 2019.

Class 8 is impaired.

**6.09 Class 9 Claim - Allowed Secured Claim of LB-UBS 2007-C2 Lookout Ridge Boulevard, LLC against Omni Lookout Ridge.**

The Allowed Claim of the Lookout Ridge Lender will be paid in full by Lookout Ridge as follows: ~~the~~ As of the Effective Date, the Lookout Ridge Lender shall apply all suspense and reserve funds to its claim, except the funds held by Lender under the Escrow Order in the Belfor Suit, as provided below. The existing promissory note (the "Original Note") ~~of~~ to the Lookout Ridge Lender will be modified and Lookout Ridge will execute a new, modified note ("Amended Lookout Note") payable to the Lookout Ridge Lender ~~("Modified Note"). The maturity date of the Modified Note shall be one year after the Effective Date ("Maturity Date"). The Lookout Ridge Lender will retain its liens and security interest in the Debtor's property to secure the Modified Note. The original principal balance of the Modified Note shall consist of; (i) the unpaid principal balance of the Original Note, (ii) accrued, unpaid interest as of the Petition Date ; (iii) any accrued, unpaid interest on the Original Note between the Petition Date and the Effective Date of the Plan; and (iv) any fees and expenses of the Lookout Ridge Lender, as may be allowed in its Allowed Claim; less all payments made by the Debtor to the Lookout Ridge Lender during the bankruptcy case prior to the Effective Date, including payments made by the Debtor under cash collateral orders. The Modified Note to lender will be payable~~ as follows:

~~(i) a lump sum payment on the Effective Date of the Plan in the amount of $334,339.38 funded by the release from the suspense funds and the reserve for replacement funds currently held by the Lender;~~

**Principal.** The principal shall be $5,548,491.62 [plus attorneys' fees incurred by the Lender after November 15, 2017 to which it is entitled to payment under its existing loan documents, not to exceed $60,000], to be increased by $1,001.81 each day that the Plan Effective Date is after February 7, 2018. The principal of the note will be adjusted to

the extent that the Allowed Claims of the holders of Class 5 claims paid by the Lender varies from $149,117.08.

**Interest.** The interest rate shall be 6.5% per annum; any interest calculation deploying the actual-360 method.

**Default Interest.** The default interest rate shall be 10.5% per annum; any interest calculation deploying the actual-360 method.

**Maturity.** The note shall mature on June 30, 2019.

~~(ii) monthly payments thereafter of $21,560, plus the payment of tax and insurance escrows required under the Note, commencing on the 1st day of the month following the Effective Date until the payment of Arrearages;~~**Initial Payments.** Commencing on the 5th day of the month following the Effective Date, Lookout Ridge shall pay $21,560 each month (a) through June 2018 or (b) until the Catch Up Payment is made, whichever is earlier.

~~(iii) a lump sum payment of $1,317,209.74 to cure Arrearages (as defined below) and to reduce the principal on the Note in an amount estimated to exceed $1.26 million from the release of the construction escrow held in that amount pursuant to the order of the Texas state court in *Belfor USA Group v. Lookout Ridge and LB-UBS 2007-C2 Lookout Ridge Boulevard, LLC* in Bell County District Court, Cause No. 292,080 ("Belfor Suit") which shall be released upon the earlier of: (1) the Debtor's payment to Belfor Property Restoration as provided in Class 10 below, or (2) the entry of a final and non-appealable order;~~

~~(iv) then monthly outstanding payments on the then outstanding principal balance of the Note, consisting of principal payments with the same amortization as in the Original Note plus interest; and~~

~~(v) payment of the balance of the outstanding principal and interest on the maturity date.~~

~~The Modified Note and loan documents will be provided to the Lender for review ten (10) days before the confirmation hearing on the Plan.~~

~~Mr. Hall will guarantee the Modified Note and grant Lookout Ridge Lender a collateral assignment of the pending contract on the Ridge property in Williamson County, Texas owned by Lookout Ridge, LLC, of which Mr. Hall is the sole member, to secure Mr. Hall's obligation hereunder, *pari passu* with the Lion's Run Lender. Such lien shall be released upon the closing of the sale of the Ridge property under the pending sales contract.~~

~~"Arrearages" shall mean a sum of money sufficient to pay the sum of (i) accrued interest on the principal balance of the Modified Note from the Effective Date through the~~

~~date on which the Arrearages are paid under section 6.09 of this Plan; (ii) accrued but unpaid interest and default interest, to the extent Allowed, from the Petition Date through the Effective Date; and (iii) Post-Petition fees of~~

**Catch-up Payment.** On or before June 30, 2018, Lookout Ridge shall pay all accrued but then-unpaid interest consisting of the accrued interest from the Effective Date through such payment, less the aggregate Initial Payments tendered to the Lookout Lender.

**Monthly Payment.** Beginning the month after the Catch Up Payment is made but no later than July 2018 and continuing each month thereafter until maturity, Lookout Ridge shall pay accrued interest each month.

**Balloon Payment.** On or before June 30, 2018, Lookout Ridge shall pay not less than $1,000,000, such balloon payment (i) being in addition to any required monthly payment, initial payment, or Catch-up Payment, and (ii) being applied to the principal balance of the New Lion's Note.

**Application Of Insurance Proceeds Or Equivalent Amount.** Lookout Ridge shall, on or before June 30, 2018, either (i) cause to be released the sum of $1,317,209.74 in funds held in escrow by the Lookout Ridge Lender (the "Escrowed Funds") pursuant to the Agreed Order to Segregate and to Dissolve Temporary Restraining Order entered on June 5, 2017 in the lawsuit styled Belfor USA Group, Inc. v. Omni Lookout Ridge, L.P. and L-B-UBS 2007-C2 Lookout Ridge Boulevard, LLC pending in the 146th District Court of Bell County, Texas, case no. 292,080-B (the "Belfor Suit") such that the Lookout Ridge Lender may apply the Escrowed Funds to the principal balance of the Amended Lookout Note, or (ii) pay the Lookout Ridge Lender $1,317,209.74, or (iii) pay the Lookout Ridge Lender ~~through the date on which the Debtor or Mr. Hall submit the payment of the Arrearages, to the extent Allowed.~~ $1,317,209.74, from a combination of the Escrowed Funds and other sources. Upon its receipt of the sum of $1,317,209.74, Lookout Ridge Lender shall assign any and all claims to the Escrowed Funds to Lookout Ridge and the parties to the Belfor Suit shall dismiss the Lookout Ridge Lender from the Belfor Suit. For the avoidance of doubt, the ~~payment of Arrearages shall account for and be reduced by the payments made by Lookout Ridge, including funds released from in escrow on the Effective Date, and the monthly payments made between the Effective Date and the payment date of the Arrearages. The Debtor currently calculates the Arrearages, assuming a December 1, 2017 Effective Date and a payment of Arrearages on March 1, 2018 to be $56,906.73, also assuming arguendo that the Lookout Ridge Lender's Proof of Claim is correct and that the attorney fees of the Lookout Ridge Lender recoverable from the Debtor for services rendered after the Bankruptcy Case is filed are $300,000. Debtor shall provide the Lookout Ridge an updated calculation of Arrearages within 10 days after the Effective Date of the Plan. If the Lookout Ridge Lender disagrees with the Debtor's calculation of the Arrearages, the Lookout Ridge Lender must file a motion within 20 days after the Effective Date of the Plan to determine Arrearages and, in that case, the Arrearages will be determined by the Court. If the Lookout Ridge Lender does not timely file such a motion,~~

~~then the Arrearages served by the Debtor on the Lookout Ridge Lender shall be deemed to be accurate.~~

~~The Debtor currently calculates the Arrearages, assuming a December 1, 2017 Effective Date and a payment of Arrearages on March 1, 2018 to be $56,906.73, also assuming arguendo that the Lookout Ridge Lender's Proof of Claim is correct, after deduction of the pre-payment penalty, and that the attorney fees of the Lookout Ridge Lender recoverable from the Debtor for services rendered after the Bankruptcy Case is filed are $300,000. Debtor shall provide the Lookout Ridge an updated calculation of Arrearages within 10 days after the Effective Date of the Plan. If the Lookout Ridge Lender disagrees with the Debtor's calculation of the Arrearages, the Lookout Ridge Lender must file a motion within 20 days after the Effective Date of the Plan to determine Arrearages and, in that case, the Arrearages will be determined by the Court. If the Lookout Ridge Lender does not timely file such a motion, then the Arrearages served by the Debtor on the Lookout Ridge Lender shall be deemed to be accurate~~**application of the Escrowed Funds, or payment, as applicable, shall be in addition to any required Initial Payments, Catch-Up payments, or Monthly Payments, and shall be immediately applied by the Lookout Ridge Lender to the principal balance of the Amended Lookout Note.**

**Additional Terms Regarding Treatment Of Class 9 Claim**

**Guaranty.** The Guarantor shall guarantee the Amended Lookout Ridge Note.

**Yield Maintenance.** There shall be no yield maintenance premium assessed for prepayment of the Amended Lookout Ridge Note.

**Loan Documentation.** The Lookout Ridge Lender's Deed of Trust, Security Agreement and Assignment of Leases and Fixture Filing shall remain in full force and effect to secure the Amended Lookout Ridge Note and shall only be modified, as necessary, to be consistent with the terms of the Debtor's Plan. The parties agree to execute such other documents as are necessary and sufficient to effect the intention of the parties herein.

~~At the same time as the Arrearages are paid, Mr. Hall will contribute sufficient capital into a segregated reserve account held by the Debtor to pay for the balance of deferred maintenance items not previously completed as shown on the attached pro forma financial statements.~~**Capital Contribution for Deferred Maintenance.** On or before June 30, 2018 and at the same time as the "Catch Up" payments by Lookout Ridge are paid, Guarantor will contribute $125,000 into a segregated account for capital improvements to, and deferred maintenance on, Lookout Ridge apartments. On or before the Effective Date, Lookout Ridge shall submit to the Lookout Ridge Lender a schedule containing a listed of proposed repairs or improvements and containing bids or estimates for such repairs or improvements for pre-approval by the Lookout Ridge Lender. The Lookout Ridge Lender shall have a security interest in the segregated account.

~~If the Court determines that the interest rate required to confirm the Plan is higher than that proposed by the Debtor, the Debtor reserves the right to seek confirmation of the Plan at the higher interest rate. In that event, the interest rate differential will be added to the Arrearages and, upon payment of the Arrearages, the monthly payments will incorporate the higher interest rate.~~

~~The Debtor does not believe that the Lender's proof of claim is accurate and has filed an objection and a counterclaim. If the Lender's claim is not an Allowed Claim as of the Effective Date, the Debtor will commence payments as provided above but if the claim of the Lookout Ridge Lender is reduced by the Court, any reduction will be applied as a credit to the Modified Note as of the Effective Date. The Modified Note may be prepaid at any time without any pre-payment penalty, charges or fees of any kind.~~

**Releases and Dismissal** As of the Effective Date, Lookout Ridge will, and does hereby, release any all claims and causes of action against the Lookout Ridge Lender and will withdraw it objection to the Lookout Ridge Lender's proof of claim, it being understood and agreed that the Lookout Ridge Lender's Allowed Claim shall be treated as set forth in this Plan.. Lookout Ridge Lender shall dismiss its lawsuit against Guarantor pending in the Texas state district court, with prejudice.

**Abatement of Belfor Suit.** Except as otherwise contemplated in this Plan, the parties to Belfor USA Group, Inc. v. Omni Lookout Ridge, L.P. and L-B-UBS 2007-C2 Lookout Ridge Boulevard, LLC pending in the 146th District Court of Bell County, Texas, case no. 292,080-B (the "Belfor Suit") shall not commence or continue any action against the Lookout Ridge Lender or to recover the funds held in escrow by the Lookout Ridge Lender pursuant to the Agreed Order to Segregate and to Dissolve Temporary Restraining Order entered in the Belfor Suit on June 5, 2017 unless and until: (a) the Lookout Ridge Lender is paid pursuant to the paragraph herein titled **Application Of Insurance Proceeds Or Equivalent Amount**, or Lookout Ridge defaults in its obligation to pay the Lookout Ridge Lender under that paragraph or defaults in its obligation to pay the Allowed Claim of the holder of the Class 10 Claim. This prohibition shall not apply to any action to release all or part of the Escrowed Funds to the Lookout Ridge Lender.

**Prohibition against Refiling.** Lookout Ridge is hereby prohibited from filing for relief under Title 11 of the United States Code prior to November 6, 2019.

Class 9 is ~~impaired~~Impaired.

**6.10    Class 10 Claim – The Allowed Claim against Debtor Lookout Ridge of Belfor ~~Property Restoration~~USA Group, Inc..** Claim 10 consists of a contract claim for building renovations performed by Belfor USA Group, Inc. and secured by a mechanic's lien. The Allowed Class 10 Claim ~~10~~ shall be paid in full, or as otherwise agreed, by monthly payments equal to ½ of the month's rent on units leased in Building 4 and then ~~either a~~ payment ~~by~~of the ~~Guarantor on or before the earlier of the (1) the close of the sale of the Ridge Property in Williamson County, Texas owned by Lookout Ridge LLC, of~~

which Mr. Hall is the sole member, (2) May 2, 2018, or (3) the entry of an final and non-appealable order in Belfor USA Group v. Omni Lookout Ridge and LB UBS 2007-C2 Lookout Ridge Boulevard, LLC in Bell County District Court, Cause No. 292,080 ("Belfor Suit"), awarding escrow funds to Belfor, whichever is earlier. balance of its Allowed Claim on or before June 30, 2018. Belfor shall not commence or continue any action in the Belfor Suit against Lookout Ridge, the Lookout Ridge Lender or to obtain the Escrowed Funds unless and until Lookout Ridge defaults in its payment obligations under this paragraph. on or before June 30, 2017. Upon full payment of its Allowed Claim, Belfor shall release its lien and release its right to any escrow in the Belfor suit assign any and all rights to the Escrowed Funds to Lookout Ridge and shall dismiss the Belfor suit. If the Lookout Ridge Lender assigns its rights in the Escrowed Funds to Lookout Ridge, Belfor shall dismiss the Lookout Ridge Lender from the Belfor Suit. Class 10 is Impaired.

## ARTICLE XIII
## DEFAULT

**13.01** **Default by Debtor**. In the event of a default by the Reorganized Debtor under the Plan, Creditors may exercise any rights granted to them under documents executed to implement the Plan or any rights available to such Creditors under applicable non-bankruptcy law. In the absence of documents executed to implement the Plan, it may be enforced as a contract. Notwithstanding any other provision, any Creditor that alleges a default, other than a default in payment of an Allowed Claim, shall give the Reorganized Debtor thirty (30) days' notice and an opportunity to cure before exercising any rights available upon default against the Debtor, the Reorganized Debtor, or the Guarantor.

Respectfully submitted,

*/s/ Ron Satija*
Ron Satija
HAJJAR PETERS LLP
State Bar No. 24039158
3144 Bee Caves Rd
Austin, Texas 78746
512.637.4956
512.637.4958 (fax)
rsatija@legalstrategy.com

ATTORNEY FOR OMNI LOOKOUT RIDGE, L.P., AND OMNI LION'S RUN, L.P., DEBTORS IN POSSESSION

## **CERTIFICATE OF SERVICE**

I, Ron Satija, counsel for the Debtors in Possession, hereby certify that a true and correct copy of the foregoing Plan of Reorganization was forwarded by the methods indicated to each of the persons shown below, on January 19, 2018, and by CM/ECF on all parties receiving notice thereby.

U.S. Trustee:
Deborah Bynum
Office of the US Trustee
903 San Jacinto Blvd., #230
Austin, TX 78701-2450
Deborah.A.Bynum@usdoj.gov
and ECF Notification

LB-UBS 2007-C2 Lookout Ridge Boulevard LLC and Comm 2015-CCRE22 E. Ctral Texas Expy LLC's Attorneys:
Akin Gump Strauss Hauer & Feld, LLP
Eric Haitz
1700 Pacific Avenue, Suite 4100
Dallas, TX 75201
ehaitz@akingump.com

Counsel for Belfor Property Restoration
David Alford
Pakis, Giotes, Page & Burleson, P.C.
Post Office Box 58
Waco, TX 76703-0058
alford@pakislaw.com

Counsel for Guarantor:
Stephen Roberts
Strasburger
720 Brazos St, Ste 700
Austin, TX 78701
Stephen.roberts@strasburger.com

*/s/ Ron Satija*
Ron Satija